May it please the Court, Eric Silver on behalf of the United States. Although unusual to see the United States going first. Yes, it is. You're right. I will first discuss whether the items in question fell within the scope of the warrant and then move on to the overbreadth and particularity claims that have been raised in this case. First, turning to the, I guess the three emails that the government is challenging the suppression ruling on. The government believes they fall within paragraph H of the warrant, which indicates documents that reflect communications with Andrews, Malik, and Hall, or other employees of PACOM. The three emails that are challenged here do reflect communications with Hall. The emails between Reinhold and Adjani, the first of which is, I sent the message to Joel. The second of which is, I thought you were going to wait until tomorrow to send the message to Joel. And the third of which references a fax from Joel and also describes Reinhold's efforts to contact Joel by phone, Joel Hall in this case by phone. So if, as defendants suggest, the magistrate intended to limit that provision simply to the direct communications themselves, the magistrate could have done so. It says reflects communications in the provision of the issue. It doesn't say the communications themselves. Moreover, looking at the warrant in its entirety, it is apparent that the government was looking for evidence in this case and not simply the threats themselves. But for evidence of what? When you look at that lengthy warrant, the affidavit is 25 pages. It seems to me it all relates to the question whether Adjani was a party, is involved in this shakedown, if you want to call it. It's true they were looking for evidence, but the question is evidence of what? Evidence of his commission of a crime, wasn't it? There was nothing in that affidavit, really, was there, that suggested that she, that they had any reason to think she was a party to this criminal enterprise? I would respectfully disagree. There's no express statement in there, as there is for Adjani, that they have probable cause to arrest him. But, of course, they're not attempting to arrest Reinhold at the time. It's important to recognize that search warrants, unlike arrest warrants, focus on the things, not the people. If there was reason to believe that there would be evidence on anywhere in the house, including Reinhold's possessions, as long as there was probable cause to believe the evidence would be there, it's irrelevant that it's Reinhold's. But they didn't have any probable cause when they obtained the warrant, did they, to believe that she was involved in any criminal enterprise? I would, first of all, respectfully disagree. And then, again, I would respectfully disagree. I think, first of all, the warrant, although the warrant, there's a number of references in the briefs to the fact that the two are married. But there is no statement in the warrant that the two are married, although I think it's a fair inference from the warrant that the two are in a relationship because they have lived together at two prior addresses. And it's a fair inference from the warrant that they're living together at the current address based on the surveillance that's at issue here. Now, of course, association, as the Supreme Court has indicated in Ibarra, is not itself sufficient to establish probable cause. But it is a factor in the determination. What's important beyond the amir association in this case is that Reinhold dropped off the extortion request. Well, but there's no evidence that she was aware what was in these three envelopes, is there? Well, we don't need direct evidence that she was aware. I think the circumstances of her delivery demonstrate that she was aware. First of all, it's unlikely that a person associated with Ajani would deliver this package if the person wasn't aware because it was easily trace-backable to that person. In fact, that's what happened in this case. They were able to trace the person who came in back to Ajani. And so it's unlikely you would do that. Moreover, these weren't just envelopes that had nothing on them. They said urgent legal documents enclosed. At the time she delivered those envelopes, was he still in the United States or was he in Switzerland? He was still in the United States. Those were delivered on the 8th, and the affidavit indicates he left for Switzerland on the 9th, although I don't think he arrived in Switzerland immediately. But he left the United States on the 9th. Because, I mean, it doesn't seem so unreasonable to me that a husband would say to his wife, could you do me a favor either today or tomorrow and drop these three envelopes off at my former place of employment? I mean, that it seems to me is a big jump to say that from that one can fairly infer that she knew what was in the three envelopes. They were sealed, weren't they? I don't think it states, but I don't know that there's any suggestion that it was open. I think it's fair to at least assume that they were sealed. Given the doubts about her status, what was wrong with Judge Hatter's resolution of saying that once they were into her laptop and into her e-mail account, that if the government thought it needed to go into the contents of that laptop, they should have gone back and sought a supplemental or separate warrant so they could address the issues that Judge Friedman is raising? Well, I'm not sure at the outset how it would cure the problem. I would expect in the same circumstance that the defendant would argue that the initial sight that we saw on the computer, whatever we saw there, was the fruit of the poisonous. Anything derived from that would be the fruit of the poisonous. Well, he didn't seem to, that didn't seem to be what Judge Hatter was saying. He said that he assumed that it was okay to get into the laptop. As he said, it isn't the, he wasn't concerned about the fact that because the computer was there, there was some apparently trying to understand what he was saying, that it was okay to open up the laptop, but once in and seeing that there might be evidence of her involvement in this, they should have stopped, sealed the situation, and sought a separate warrant. Well, I think reasonableness in the execution of the warrant is just that, and I do think if you have information that it's reasonable that the evidence would be there. There is no inherent need in that circumstance to get a second warrant if the items you're looking for are embraced within the warrant you have. And as we indicated, Paragraph H does embrace the items that we intended to seize in this case, and it was actually whether or not she was involved in this offense, even if she wasn't, it was reasonable to look there for the evidence in question, even if she wasn't a participant in this crime. These weren't emails that we were looking at. That may be true, but the problem is then you're coming back to what you started out with, which was 5H, and it says, records, documents, and materials which reflect communications with the named individuals or the two companies or officers of the two companies reflect. I mean, I didn't do criminal work. I did civil discovery, and we always used to go nuts on anything related to and blah, blah, blah, and you get this open-ended language which basically, if read literally, opens up in the entirety of files to the questioner or to the seeker without any limits on it. So it says which reflect communications. Communications about what? Does it not have to be more particular? Well, I do think as to particularity, you have the introductory language of what the items are to be seized, which reflects the crime of extortion in this case, and you have the subject matter, which is the communications with kind of PACOM and its employees. So if this was communication between just Reinhold and PACOM employees, then would it be your position it was not within the scope of the warrant? No, I think our position would be that it's within the warrant. I'm sorry if it's between Ajani and PACOM and it's about communications between Ajani and PACOM. No, let's suppose that what the e-mail said is that she writes to her husband. She says, I called Joel and told him that he'd better take prompt action on the subject of what was in those sealed envelopes that I handed off. Is that within the scope of the warrant? It's not a communication from Chris to them. It's her communication. But it's her communication with PACOM. I mean, I guess that's what I'm saying. So you're saying reflect communications with. It doesn't limit it. You were trying to invoke the rest of the affidavit. The affidavit talks about an – and that's the thrust of, as I understand it, defendant's argument. The thrust of this affidavit is her husband's communications, and now they're in her computer, assuming that that's relevant. And that's one of the difficulties of this case is once you're in, it appears you can get anything that's – you can look at anything that's on the computer or at storage media or whatever. Well, I think they did know from the affidavit that she had a communication with PACOM. I mean, she dropped off the three initial extortion requests in this case, and she had interaction with the employee, the receptionist. It seems to be stretching to say she had a communication with them. Maybe you mean saying here's some papers for you? That's the communication? I mean, but what we're seizing in the warrant doesn't have to – it ultimately doesn't have to incriminate her. It can incriminate Johnny. We weren't going into the e-mail between, for example, her and her mother. At least that's not what is at issue here, e-mails between her and some third party. They could have had a communication about the delivery and it not incriminate her, it would simply incriminate in Johnny relating to the delivery. And it would be reasonable to expect there would have been a communication about the delivery in this case. They were dropped off on the 8th, and by the 12th, which was the date in which it had to be responded to, PACOM hadn't responded. And, in fact, Johnny had to send a follow-up e-mail saying, you know, did you receive the package I sent by special courier? Even if it hadn't been Reinhold who delivered this, if it had simply been a courier service, it would be reasonable in that context to expect that they would have had communications about it. Suppose, Bill, one step on Judge Fisher's question. Suppose what you had was her communication to her mother saying the following. I just heard from my husband, and I'm delighted to tell you that he has been in touch with someone from PACOM, and it looks as though we're going to be doing very well in this matter. Would the warrant cover that communication? I'm not. It's from her to her mother, but in a broad sense, it relates to communications with someone from PACOM. Well, I think ultimately the question would be whether it would be reasonable in execution of the warrant in that circumstance to look in that place for the information. And the scenario that you gave, it probably wouldn't be reasonable because unless you had. . . Well, how can you avoid seeing it? Once you're into the computer and you're looking at the e-mails, are you saying that this warrant somehow restricts once you're into. . . We're assuming it's her computer. Now, whether or not they had to accept her word or not, I'm just setting that aside. Let's assume they're in her computer and in Judge Friedman's hypothetical. It shows up. . . The addressee doesn't show any indication that Chris Ajani was part of the communication, but he is clearly in the content of the e-mail. Under your reading of 5H, as Judge Friedman said, it would certainly reflect a communication involving him. I think in that circumstance it might depend on how you got there, I guess. Because, again, I do think all warrants are governed in execution by reasonableness. Now, that's not covered by the warrant clause itself. It's just the reasonableness clause of the Fourth Amendment. Okay. We're way over time. Thank you. But we will help you more than use the time, so we'll give you a minute and a half to respond if you wish. Good morning, Your Honors. Marilyn Bednarski on behalf of Ms. Jana Ryan-Holt. Could you just, very briefly, just say briefly what was wrong here? First, our position is that the warrant cannot be read so broadly to allow the police to open and read all e-mails and all data, basically, in her computer. There's no probable cause to search her computer, even if this was their probable cause to search. I think the thrust of the warrant, as Judge Fisher said, was Adjani's computers and Adjani's communications. There was no probable cause in the warrant to believe she participated in having anything to do with those e-mail communications, e-faxes, i-chats, about which we heard extensively in the affidavit. But are you saying that the warrant didn't cover all computers in the location? The warrant, as I read it, within, as defined by the probable cause in the affidavit, the traditional limitations on a warrant would be Adjani's computers and evidence Even though he might have had access to this other laptop? Well, that's an interesting question. There were only two computers that are at issue at this case. Yeah, but they were in the house. They shared a common space. It was clear from the facts in the case that he was gone in Switzerland during the two-week period when the electronic extortionate communications occurred. Yes, but why wouldn't he be communicating from his lap to her laptop? There's no evidence that he did. I think it's the absence of evidence. It's a question of what the warrant says. The warrant says computers, hard drives, computer disks, et cetera. And they're a husband and wife. They share a common abode. And if he's got his laptop with him and she's got her laptop, which is, in fact, apparently what happened. He had his laptop over in Switzerland and was trying to find the free Wi-Fi, and she's writing to him and talking about the very subject. She could have been an innocent party. And he was simply saying, I'm over here and I have this important business with PACOM, taking Judge Friedman's hypothetical, same subject, never saying that she was involved, but that there was that he's saying, look, don't worry about the payment on the Land Rover. We're going to come into some good money here because I've got a good business deal I've just been talking to PACOM about. Well, there's no indication that in the affidavit that he was in communication with her about PACOM or any of those subjects. There's no ---- No. In the affidavit, they didn't know what was going to be found in the computer. The one thing they didn't know, they did know, is that sometimes when people are up to such mischief, they hide what they have acquired in a computer. They knew that. But they didn't know what was going to be. They didn't know what was going to be on his computer, did they? Well, I think that the parameters of the search have to be defined by the evidence that they had. And once they got ---- once they saw that that computer that she used, once they opened it and saw that there were things in there that they did not have probable cause to search, they should have gone and gotten another warrant. They did have probable cause to search. What is it that they didn't have probable cause to search? They did not have probable cause to search. You seem to go on the assumption, which I think is legally wrong, but maybe you can cite me to a case that supports it, that in order to continue a search where there's incriminating evidence, where the legitimate communication, this communication reflects a communication of Chris Azzani with the named person at PACOM. That was within the scope of the warrant. It so happens that now establishes she also is involved in the scheme. But that doesn't suddenly turn what is legitimately within the scope as involving Chris Azzani into somehow no longer being within the scope, does it? No, but what we know is that she ---- to believe that she had committed a crime as of the drafting of the warrant. That's true. And that was conceded by the government. That's true. Okay. And ---- They don't need to make it. If her computer is lawfully within the scope of the search because Azzani may have had access to it and it may have had communications which reflect or e-mails which reflect communications her husband had with PACOM, they did have probable cause for that. And if it so turns out, unfortunately for her, that she also was party to it and she winds up getting indicted now for her part in the scheme, I don't understand how that invalidates the warrant or the search, initial search. Well, my position is that they did not have probable cause to search her computer because they did ---- But you keep saying they didn't have probable cause to search her computer. I thought it's well established that they don't have to accept her statement, that's my computer, hands off. They didn't know whether it was her computer or his computer or whether for all they knew, both of them used both computers. But what they knew when they went in is that all the indicia were that that was the computer that she used and all the indicia were that he had a laptop that he had taken with him and during that time period from the 8th to the 22nd, he had it. But counsel, these aren't strangers. It's husband and wife. Don't you expect that when the husband's overseas, he's communicating with his wife and therefore her computer, if it's entirely hers, might have communications from him to her that would reflect communications he had with PACOM. But I think importantly, the warrant did not say to search for communications between Ajani and Reinhold. The warrant only ---- It didn't say that at all. That's true. It didn't put any limits on it. It said any computer media, you can search all computers in the facility, in the house, that reflect communications between Chris and PACOM, which would encompass a communication from him to her on her computer recorded thereby reflecting him saying, I have had a communication with PACOM. Why would they have to have probable cause that she was somehow involved in the scheme? Well, I think it's ---- First, I think it's merely speculation for them to take the position that it could have been used by Ajani or could have contained evidence of Ajani's crime. He didn't even have to have access to it. All he had to do was have her email address. I mean, it could have been by, you know, some ---- the other guy, the guy who spilled the bean or that he was, you know, had given him the customer information. That guy could have communicated to that email address. It could have been a drop address, right? Well, even if this court were to find that there was probable cause to search that window computer, then they still couldn't search every single thing in it. It's like a room that's filled ---- it's like a 10-by-12-by-10 room. It's a very troublesome part of this computer search. Filled with 7.5 million pieces of paper. Absolutely. And they have no evidence in the affidavit that he's in communication with her about these PACOM people. The government says the warrant didn't say ---- for instance, the warrant did not say search for communications of theirs. Didn't the warrant, though, tell the police precisely what they were to look for, what they were to seize? They were to seize documents involving ---- documents relating to communications with the PACOM. Well, I think the interpretation of seizing documents, materials, reflecting, was the troublesome word. It's an overbroad interpretation to include his communications with his wife within that. It was not ---- the emails ---- Why is it overbroad? It's a broad ---- it's a fairly broad grant of authority. And it seems to me they can look at ---- I assume they can look at something and say, does it or does it not have any reference to communications? And if all that was said in the email was, I had a wonderful game of golf yesterday, obviously that is not comprehended by the warrant. But where the communication comes in and says, I spoke to so-and-so yesterday and things are going well, that does refer to that. Well, I think there's a couple things. The word reflecting is far from precise. And their own investigation gave them all the information they needed to make it more precise. They knew exactly ---- But what, in your opinion, should they have said in the warrant that would have justified this seizure of these items? They should have said, if they had probable cause, that they wanted emails, iChats, faxes from a Johnny to anyone else reflecting, discussing, referring to, relating to. They had the ability in the way they conducted the search and in the language that they chose to precisely define the search. And they didn't do it. They used generalized language when they had ---- Are you saying that in the warrant they should have explicitly referred to her? If they had probable ---- I want to know about if they had probable. Okay. Under your theory of the case, in order to sustain what they did, do you say they should have, say, and I spoke about communications, they should have said communications involving he and she plus anyone else? They should ---- What they did in the warrant is they specified a Johnny's communications with the Paycom people. They did specify? They did. It's clear in this affidavit that what the agents were seeking was his extortionate communications and that it was always ---- Where did they say about they were authorizing the agents to seek communications from Johnny, between Johnny and people in Paycom? I didn't ---- In paragraph H, which is the one we're dealing with, it's talking about records, documents, and materials which reflect communications with Malik, Andrews, Hall, or other employees or officers of Paycom or ---- That's precisely what's in these e-mails. Yeah. Precisely. Well ---- You seem to say it can only be, it's only precisely within if the communication that was on the e-mail was actually Chris or Johnny typing it to somebody else. Is that it? Well, I think there are two problems. I think that the use of the language that they use and the interpretation they have is overbroad and that they had the information to make it precise and narrow. And once they ---- But I'm trying to understand what you were saying before. Okay. Go ahead. And once they got into her computer and they saw there were things there that they didn't have probable cause for, they then could precisely focus on her computer with all the evidence they have and ask for permission. And that extra layer is what ---- By the way, on your 28J letter, even though I think we appreciate being told about the good faith issue not being raised for the first time in reply, the Ninth Circuit does have that rule, but the case you cite happens, in fact, to be a Seventh Circuit case, not a Ninth Circuit case. Oh, I'm sorry. Yeah. Thank you. Okay. Do you wish to respond briefly? Very briefly, Your Honor. I would just simply point out that it is clear in this case that they were not looking directly for just the communications themselves. They already had the communications. They were there when the extortion requests were made. They were looking for evidence to tie Ajani to the crime and to ---- if the panel has no further questions. And he wasn't there, and this was essentially a computer-based fraud that they were talking about in the first place. It was a computer-related offense, and it was a technology-related offense, which makes computers the most logical. I do have a question, though, about the warrant. Do you know the provenance of the methodology provisions of the warrant? Is that taken from the FBI manual? There's a very long, detailed list and justification for why it's necessary to potentially seize the various media, and then it has these various steps that the officers are supposed to follow as they go through the search and if they have to establish a need to take the computers and media off-site. Do you know where all of that language comes from? I believe this language ---- our office has language that we use for computer search describing what is going to be done if you're going to decide to make a decision to take the computer off-site, and I believe that the language in this case is at least similar to the language that our office has. I'm not sure that it's word-for-word, that office, but word-for-word, the language that our office uses. But is this sort of a boilerplate or some kind of standard language that goes into warrants where there is a computer database to be searched and seized? I think that's correct because you can't make the determination at the time whether you're going to need to be able to search it there or whether you're going to have to take it somewhere else to search it. And I do think the language in the case is a similar language that's used in all computer-related searches. Okay. Thank you. The case just argued is submitted. We'll hear the next case for argument, which is United States v. Ventura.
judges: Schroeder, Friedman, Fisher